J-S32005-20 & J-S32007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE AMBIORIX ABREU | : | |
| | : | |
| Appellant | : | No. 2379 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 30, 2019
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-CR-0000657-2018

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE AMBIORIX ABREU | : | |
| | : | |
| Appellant | : | No. 2414 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 30, 2019
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-CR-0000613-2018

BEFORE:  KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                          Filed: January 21, 2021

In docket number CP-45-CR-0000657-2018 Appellant, Jose Ambiorix

Abreu, appeals from the aggregate judgment of sentence of 12 to 32 years'

incarceration, which was imposed after he pleaded guilty to Attempted

_____

[*] Retired Senior Judge assigned to the Superior Court.

Homicide, Aggravated Assault and Recklessly Endangering Another Person (Attempted Murder case).[1]   In docket number CP-45-CR-0000613-2018 Appellant appeals from the aggregate judgment of sentence of 32 months to 96 months' incarceration, which was imposed after he pleaded *nolo contendere* to Endangering the Welfare of a Child (Child Endangerment) and Corruption of a Minor (Child Endangerment case).[2]   We affirm.

The facts underlying this appeal, taken from the trial court opinion, are as follows:

> [Appellant] was arrested and charged with multiple counts of Aggravated Indecent Assault, several counts of Indecent Assault, Endangering the Welfare of a Child ("EWOC"), Corruption of a Minor, and Unlawful Contact With a Minor for sexually abusing his daughter, [A].A.[3], between October 1, 2015 and November 17, 2017.[4]  The abuse came to light [on November 17] 2017 when [A].A. was taken to the

_____

[1] 18 Pa.C.S. §§ 901, 2702, and 2705, respectively.

[2] 18 Pa.C.S. §§ 4304, 6301, respectively.

[3] We note that in its Pa.R.A.P. 1925(a) opinion, the trial court refers to the complaining witness as I.A., however, this appears to be a typographical error as elsewhere in the record the complaining witness is referred to as A.A.  We will refer to the complaining witness herein as A.A.

[4] On November 17, 2017, while in the hospital, A.A. reported to Detectives that Appellant digitally penetrated her vagina with his fingers while his penis was exposed on one occasion and from July 2016 through November 2017, A.A. stated that Appellant would grab and feel her buttocks approximately 2 times a month. Each time this occurred, Appellant had an erection and would press it against A.A.'s buttocks. ***See***, Affidavit of Probable Cause, 3/5/18. Through further investigation, A.A. reported that the conduct had been occurring since October 1, 2015.  ***See***, Information, 4/6/18.

hospital after attempting to kill herself. [A].A. reported that she made the attempt because of the assaults.

In addition to the criminal investigation that concluded with the sex offense charges, [Appellant's] abuse of [A].A. gave rise to parallel child welfare investigations which resulted in [A].A., and later her brother, being adjudicated dependent, and [Appellant's] wife, [A].A.'s mother, being indicted for failing to protect [A].A. The undersigned presided over the hearing at which [A].A.'s brother was adjudicated dependent. However, another judge of this Court adjudicated [A].A. dependent. . . .[The Attempted Murder case] has its Genesis in the sexual assault case. When [A].A. first disclosed the sexual abuse, [A].A.'s mother [Appellant's wife] did not believe her. In fact, she aligned herself with [Appellant] against [A].A. However, in late February, 2018, a letter from [A].A. caused her mother to briefly believe the allegations. [On February 23, 2018, Appellant] was confronted by his wife, an altercation ensued. During the altercation, [Appellant] assaulted his wife and threatened his wife's father and friend who were also present.

[Appellant's] wife did not want charges filed against [Appellant]. She did, however, go to the courthouse to obtain a temporary Protection From Abuse (PFA) order. When [Appellant's] wife was too late to obtain a PFA that afternoon, she contacted the police for an escort to the family's residence so that she could retrieve some items, including her son's medicine.

While [Appellant's] wife, her father, and her friend were in her car waiting for the police escort, [Appellant] violently crashed his vehicle into them. All three occupants were injured. [Appellant's] father-in-law sustained the most severe injuries. [Appellant's] wife and her friend were trapped in the car. [Appellant] approached the car and said to the entrapped occupants, "I'm glad you're dead, killed you all." As a result, [Appellant] was arrested and charged with multiple counts of Attempted Homicide, Aggravated Assault, Simple Assault, and Recklessly Endangering Another Person (REAP).

Subsequently, [Appellant's] wife re-aligned herself with [Appellant] and reverted back to disbelieving her daughter.

- 3 -

> She was not cooperative with authorities. In fact, she made affirmative efforts to obtain [Appellant's] release from jail by attempting, through harassment, threats, and verbal abuse, to get the friend who was with her during [Appellant's] in-person assault and the vehicular assault to change her story. As a result, [Appellant's] wife was charged with Intimidation of a Witness and Solicitation to Commit Perjury. Up through the time [Appellant] pled [guilty], was sentenced, and filed post-sentence motions, his wife remained distanced from the Commonwealth. This was especially true after his wife pled nolo contendere to one of the charges filed against her following [Appellant's] entry of pleas in both of these cases as discussed below.

Trial Court Opinion at 2-3 (footnote omitted).

On February 4, 2019, Appellant pleaded guilty to Attempted Homicide, Aggravated Assault and REAP in the Attempted Murder case. On February 4, 2019, Appellant also pleaded *nolo contendere* to Child Endangerment and Corruption of a Minor in the Child Endangerment case. As a part of the negotiations, Appellant and the Commonwealth agreed that Appellant's aggregate minimum sentence in both docket numbers was to fall between 10 and 17 years and the maximum sentence was delegated to the discretion of the trial court. Appellant was represented by counsel, Brandon R. Reish, Esq., in the former case and by the Public Defender in the latter case. A sentencing hearing was scheduled for April 30, 2019. On February 22, 2019, Attorney Earl Raynor, Jr. entered his appearance on behalf of Appellant in both docket numbers.

On March 18, 2019, prior to sentencing, Appellant filed a Motion to Withdraw his Guilty Plea in both docket numbers.[5] In the Attempted Murder case, Appellant argued that he was innocent of the charges and had evidence to support his assertion. In the Child Endangerment case, Appellant argued that he was innocent of the charges and offered evidence challenging the credibility of A.A.'s allegations. The trial court set a consolidated hearing on both motions for April 30, 2019. On April 30, 2019, after the hearing, the trial court denied Appellant's motions to withdraw his guilty pleas and proceeded to sentencing on both docket numbers.

In the Attempted Murder case, Appellant was sentenced to 7.5 to 20 years' incarceration on the Attempted Murder charge, and 4 to 10 years' incarceration on the Aggravated Assault charge, to run consecutive to the Attempted Murder charge. Order, 5/2/19. Appellant was sentenced to 6 months' to 2 years' incarceration on the REAP charge, to run consecutive to the Attempted Murder and Aggravated Assault charge. *Id*. Appellant was sentenced to an aggregate sentence of 12 to 32 years' incarceration in the Attempted Murder case.

On the same date, Appellant was sentenced in the Child Endangerment case. Appellant was sentenced to 16 months to 4 years' incarceration on the

---

[5] We note that Appellant titled both motions Motion to Withdraw Guilty Plea, although he pleaded *nolo contendere* in the Child Endangerment case. Initially, we note that "for purposes of a criminal case, a plea of nolo contendere is equivalent to a plea of guilty." ***Commonwealth v. Norton***, 201 A.3d 112, 114 n.1 (Pa. 2019) (citation omitted). For continuity, we will refer to both motions as Motion to Withdraw Guilty Plea.

Child Endangerment charge and 16 months to 4 years' incarceration on the Corruption of Minors charge, to run consecutive to the Child Endangerment charge. Order, 5/2/19. Appellant's aggregate sentence in the Child Endangerment case is 32 months to 96 months' incarceration. Appellant's sentence in the Child Endangerment case is to run consecutive to the sentence in the Attempted Murder case. *Id*. Appellant's aggregate sentence on both docket numbers is 14 years 8 months to 40 years' incarceration.

On May 9, 2019, Appellant filed post-sentence motions in both docket numbers challenging the discretionary aspects of his sentence and argued that the trial court erred in failing to recuse itself. The motion also included an additional argument that the trial court should recuse itself. On May 10, 2019, Appellant filed a Motion for Reconsideration of Denial of Motion to Withdraw Guilty Plea in both cases. On July 23, 2019, the trial court denied Appellant's post-sentence motions, including the motions to reconsider. On August 12, 2019, Appellant filed timely notices of appeal at both docket numbers.[6]

Appellant presents nearly identical issues in both appeals.

---

[6] Appellant complied with the trial court's order and timely filed a Pa.R.A.P. 1925(b) statement of errors complained of on appeal in both docket numbers. Appellant filed a supplemental Rule 1925(b) statement in his Child Endangerment case and included an additional SORNA issue, however, Appellant abandoned that issue by not including it in his brief. *See Commonwealth v. Heggins*, 809 A.2d 908, 912 n.2 (Pa. Super. 2002) (citation omitted) (holding that an issue identified on appeal but not developed in appellant's brief is abandoned and therefore waived).

> 1. Whether the lower court abused its discretion in denying Appellant's pre-sentence motion to withdraw guilty plea and motion for reconsideration.
>
> 2. Whether the sentencing court erred as a matter of law, abused its discretion, violated the fundamental norms of sentencing and specific provisions of the sentencing code where the sentence imposed was manifestly excessive and unreasonable?
>
> 3. Whether the sentencing court erred as a matter of law and abused its discretion when it failed to recuse itself.

Appellant's Brief at 5-6 (reworded for simplicity).

As Appellant presented nearly identical issues for our review in the Child Endangerment and Attempted Murder cases, and the cases share nearly identical procedural history in the trial court, we will address both cases. Appellant's first issue set forth on appeal contains two separate issues. First, Appellant argued that the trial court erred in denying Appellant's pre-sentence motion to withdraw his guilty pleas. Second, Appellant argued that the trial court erred in denying Appellant's post-sentence motions for reconsideration of Appellant's pre-sentence motion to withdraw his guilty pleas.

Appellant argued that he has shown a "credible and plausible claim of innocence" because he testified that he did not engage in the charged conduct during his motion to withdraw guilty plea hearing, maintained his innocence when speaking to the pre-sentence investigator, had no history of conduct remotely similar to these allegations, and has a minimal criminal record. Appellant's Brief (Attempted Murder) at 29-30. Additionally, Appellant argued that he presented exculpatory evidence to the trial court, "including a written

confession of his wife." *Id*. at 30.[7] Appellant argued that the Commonwealth would not be prejudiced by the grant of a new trial because "the prosecution has an independent fact witness, corroborating the claims of the complaining witness, as well as physical and expert testimony." *Id*.

"We review a trial court's ruling on a [pre]sentence motion to withdraw a guilty plea for an abuse of discretion." *Commonwealth v. Williams,* 198 A.3d 1181, 1184 (Pa. Super. 2018) (citation omitted).

> When a trial court comes to a conclusion through the exercise of its discretion, there is a heavy burden on the appellant to show that this discretion has been abused. An appellant cannot meet this burden by simply persuading an appellate court that it may have reached a different conclusion than that reached by the trial court; rather, to overcome this heavy burden, the appellant must demonstrate that the trial court actually abused its discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the trial court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. Absent an abuse of discretion, an appellate court should not disturb a trial court's ruling.

---

[7] Appellant also argued that Ramon Abreu, Appellant's father, "would have testified that he observed the accident and saw that as Appellant was making a left turn into the intersection the Complainant, Ivette Abreu, drove directly into him." Appellant's Brief (Attempted Murder) at 5. Appellant did not raise his argument concerning Mr. Ramon Abreu in his pre-sentence motion to withdraw, and as such, this argument is waived for consideration on appeal pertaining to this issue. Issues not raised before the lower court are waived and cannot be raised for the first time on appeal, pursuant to Pa.R.A.P. 302(a). This argument may be considered only with respect to his post-sentence motion for reconsideration of the trial court's denial of Appellant's Motion to Withdraw Guilty Plea.

***Commonwealth v. Norton***, 201 A.3d 112, 120 (Pa. 2019) (citations omitted).

Pennsylvania Rule of Criminal Procedure 591(A) provides:

> At any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct, *sua sponte*, the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty.

Pa.R.Crim.P. 591(A). Similarly, in ***Commonwealth v. Forbes***, the Pennsylvania Supreme Court concluded: "[a]lthough there is no absolute right to withdraw a guilty plea, properly received by the trial court, it is clear that a request made *before* sentencing ... should be liberally allowed." ***Commonwealth v. Forbes***, 299 A.2d 268, 271 (1973) (citation omitted) (emphasis in original). The Court in ***Forbes*** explained:

> [I]n determining whether to grant a pre-sentence motion for withdrawal of a guilty plea, the test to be applied by the trial courts is fairness and justice. If the trial court finds "any fair and just reason", withdrawal of the plea before sentence should be freely permitted, unless the prosecution has been "substantially prejudiced."

***Id.*** (internal citations and some internal quotations omitted).

In ***Commonwealth v. Carrasquillo***, 115 A.3d 1284 (Pa. 2015), the Pennsylvania Supreme Court expressly reaffirmed that the trial court's discretion should be administered liberally in favor of the accused, but added,

> [T]here is no absolute right to withdraw a guilty plea; trial courts have discretion in determining whether a withdrawal request will be granted . . . and any demonstration by a defendant of a fair-and-just reason will suffice to support a

grant, unless withdrawal would work substantial prejudice to the Commonwealth.

***Carrasquillo***, 115 A.3d at 1291–92 (citation and internal footnote omitted).

Specifically, this Court clarified that when reviewing whether a defendant's claim of innocence is a fair and just reason to permit him to withdraw his guilty plea before sentencing,

> [A] defendant's innocence claim must be at least plausible to demonstrate, in and of itself, a fair and just reason for presentence withdraw of a plea. More broadly, the proper inquiry on consideration of such a withdraw motion is whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdraw of the plea would promote fairness and justice.

***Commonwealth v. Islas***, 156 A.3d 1185, 1189 (Pa. Super. 2017) (citation omitted). This Court has directed trial courts to distinguish between "mere, bare, or non-colorable" assertions of innocence on the one hand and those that are "at least plausible" on the other. ***Id***. at 1190 (citation omitted). Importantly, this Court directed that "as trial courts undertake the task of making that distinction, both the timing and the nature of the innocence claim, along with the relationship to the strength of the government's evidence, are relevant." ***Id***.

During the hearing on Appellant's motion to withdraw his guilty plea, Appellant presented to the trial court a card written in Spanish, from his wife. An interpreter for the trial court read the card sent by Appellant's wife to Appellant, which stated, in relevant part, "I know that it was an accident that

happened because last Tuesday I had a vision and I moved my car and caused the accident." N.T. 4/30/19 at 47. Appellant testified:

> I was driving. All of a sudden in the intersection about five seconds later my wife put her car in the middle. I didn't have any other option but to brake. I couldn't brake; I can't cause magic to happen and so I didn't have any other option but to hit her car.

N.T. 4/30/19 at 45. Appellant testified he was driving a Chevy Suburban approximately 30-38 miles per hour, approaching a T-shaped intersection, to make a right turn. *Id*. at 55. Appellant testified that he was heading to the supermarket. *Id*. at 54.

The Commonwealth presented an eyewitness, Alta Gracia Reyes, who testified that the car containing Appellant's wife, her friend and father, was parked and the Appellant "moved her car with his car and then – then he came and on the left side he hit her car on the driver's side." *Id*. At 35. Ms. Reyes also testified that Appellant's wife's car was parked "on the side not right in the middle" of the street; she stated "[Appellant] put it in the middle." *Id*.

The Commonwealth also proffered evidence that Appellant was driving approximately 51 miles per hour, on a residential road. *Id*. at 25. The Commonwealth proffered that an expert's report would state:

> the operator of the Chevrolet [Suburban, Appellant,] applied heavy pressure to the accelerator pedal to accelerate the vehicle from approximately 25 miles per hour to 51 miles per hour just before the collision . . . did apply the brake for a minimum of one second prior to collision traveling approximately 28 to 38 miles per hour at the time of impact.

*Id*. at 25.  The Commonwealth also presented photographs of the scene which depicted the Appellant's wife's car on the side of the road.  *Id*. at 23-24. Additionally, the Commonwealth presented evidence that Appellant fled the scene after the incident.  *Id*. at 23.

With regard to both docket numbers, before ruling on the motions to withdraw the guilty pleas, the trial court stated,

> [A]s both parties know under the standard by which I need to review the motion I need to look to determine on the one hand is the defendant's defense plausible and colorable and all the verbiage that is in the cases and on the other hand you know one of the very clear factors is how does the defense jive with the evidence of the case and what is the strength relative and otherwise of the Commonwealth's evidence.

N.T. 4/30/19 at 26.

In deciding the motion to withdraw the guilty plea with regard to the Attempted Murder case, the trial court determined,

> The defendant's story by itself isn't plausible; it doesn't match the expert or layperson's assessment of the situation. It's inconsistent with the statement given by other people to the police and the other matters that are of record both in the criminal cases and in the dependency case.  And simply saying that, now I have another version of events because I don't want to be sentenced on this doesn't mean it's a plausible assertion of innocence that has any basis in fact.  That's one.  Number two is, everything that I've heard today from [Appellant's new counsel] which isn't testimony and from the defendant which is and much if not everything that's in the motion all pre-dated the plea.  This is not a situation where a defendant was misled, where an attorney didn't fully or properly explain a legal issue to a client or where evidence was disclosed by the Commonwealth or learned by the defense after the plea or where there was

> any claim of even ineffective assistance of counsel or anything that alone or in conjunction with what the defendant tried to plead here would allow him to withdraw the plea and fairness and justice don't necessitate that. . . . So this was a voluntary, knowing, and intelligent plea in an attempted homicide case in every sense of that term, legal and practical, and the assertions of the defendant now after the fact all of which were known prior to the plea being entered, just don't rise to the level of permitting him to withdraw the plea and so that's what I'm going to find.

*Id*. at 68-72.

We find that the trial court did not abuse its discretion in denying Appellant's pre-sentence motion to withdraw his guilty plea. The trial court correctly applied the law and assessed the plausibility of Appellant's claim of innocence. The trial court, after hearing the testimony presented and proffered by Appellant and the Commonwealth, determined that Appellant's innocence claim was not plausible. It correctly considered the strength of the Commonwealth's evidence in assessing the plausibility of Appellant's claim of innocence. *Islas*, 156 A.3d at 1191. We find that the trial court did not abuse its discretion in determining that Appellant's claim of innocence was not plausible and, therefore, there existed no fair and just reason to allow a pre-sentence withdraw of his guilty plea. We discern no abuse of discretion in the trial court's application of the law.

Next, Appellant argued that the trial court erred in denying his pre-sentence motion to withdraw his guilty plea in the Child Endangerment case. Appellant argued that he "offers a credible and plausible claim of innocence." Appellant's Brief (Child Endangerment) at 25.

> [T]rial courts have the discretion to assess the plausibility of claims of innocence. Consistent with the well-established standards governing trial court discretion it is important that appellate courts honor trial courts' discretion in these matters, as trial courts are in the unique position to assess the credibility of claims of innocence and measure, under the circumstances, whether defendants have made sincere and colorable claims that permitting withdraw of their pleas would promote fairness and justice. . . . Thus, a court's discretion in ruling on a presentence motion to withdraw a guilty plea must be informed by the law, which, for example, requires courts to grant these motions liberally, and to make credibility determinations that are supported by the record.

*Commonwealth v. Norton*, 201 A.3d at 121.

At the hearing on the pre-trial motion to withdraw the guilty plea, Appellant did not testify regarding the Child Endangerment case. Counsel read into the record a statement that Appellant gave to the pre-sentence investigator,

> You go ask my daughter what happened. Her boyfriend followed her from New Jersey to here. Her boyfriend had a birthday party on November 17th. My wife didn't want my daughter to go to the party. The daughter was a liar. My daughter called me to pick her up and I told her I was working. She asked me if he could come to our house. I said if he was going to come someone would have to be there. . . . I think he said something to her. She took medicine and tried to kill herself and then she blames it on me.

> The DA had to find somebody to charge. They didn't want to charge my wife so they charged me. How are they going to believe this charge with no evidence or nothing? I would never do anything to her. I would never do nothing to nobody to do things they don't want to. How would I do this to my daughter.

- 14 -

N.T. 4/30/19 at 59-60. Counsel also proffered to the trial court that A.A. made similar allegations against Appellant in 2015 that were unfounded by CYS (Child & Youth Services). Additionally, counsel proffered a video from Appellant depicting the Appellant and A.A. together on November 17, 2017, the date of A.A.'s attempted suicide and disclosure of the abuse to authorities, where A.A. does not appear to be in distress. Counsel also asserted that Appellant only pleaded guilty in this case because of the advice of his prior attorney.

During the hearing on Appellant's motion to withdraw, the trial court stated,

> [w]ith respect to the [Child Endangerment] case, there is no testimony, there is no specific evidence, there's just simply argument and all that really is saying is my daughter is not credible and there's a mere assertion of innocence. No testimony, no anything else other than [Appellant's new counsel], to use a law school statement[,] banging on the table and that simply doesn't meet the standard either.

N.T. 4/30/19 at 72. The trial court expounded during the post-trial motion hearing stating,

> [a]nd as I said at the original hearing and I'll say again now, none of what you're talking about was unknown to Mr. Abreu and his attorney at the time of the plea. I don't believe that this [motion to withdraw guilty] plea is properly motivated. I also did not find credible Mr. Abreu's testimony and nothing about the video - - since you already told us what's on that . . . is going to change my mind about that.

N.T. 5/31/19 at 21-22.

- 15 -

We find that the trial court did not abuse its discretion in denying Appellant's motion to withdraw his guilty plea in the Child Endangerment case. The record supports the trial court's credibility determination regarding Appellant. Appellant made the self-serving statement professing his innocence to the pre-sentence investigator on April 9, 2019, which was after he pleaded guilty and submitted his motion to withdraw his guilty plea. The trial court was in the best position to assess the credibility of the Appellant, and we will not disturb that credibility determination. *Norton*, 201 A.3d at 121.

Additionally, we will not disturb the trial court's determination with regard to the video. The allegations against Appellant span from 2015-2017 and the video depicted one day that Appellant and A.A. were together; we do not find that the trial court abused its discretion in its determination that the video did not provide a fair and just reason to permit withdrawal of the guilty plea, particularly in light of the ongoing nature of the allegations of abuse and we will not disturb the trial court's credibility determination. *Id.* Further, Appellant does not aver that prior counsel gave him *erroneous* advice in pleading guilty in the Child Endangerment case because of the Attempted Murder case, and we find no abuse of discretion in the denial of the motion to withdraw the guilty plea with regard to this claim.

With regard to the prior allegations made by A.A. in 2015 that were unfounded by CYS, the Supreme Court's determination in *Commonwealth v. Norton*, 201 A.3d at 121 is instructive. There, the Supreme Court determined

- 16 -

that the appellant's "belated wish for a trial fails to bolster his claim of innocence" where appellant did testify at the hearing on the motion to withdraw his *nolo contendere* plea and stated that he was innocent, he could not live with himself for pleading **nolo contendere** to indecent assault charges he did not commit, and that he wished to test the Commonwealth's evidence because the complaining witness answered "I don't know" at least fifteen times at the preliminary hearing. **Id**. The Court stated that appellant's belated wish for a trial failed to bolster his claim of innocence, "particularly in light of the fact that any vulnerability in the Commonwealth's evidence specifically the victim's testimony, was well known to Appellant prior to him entering the plea," **id**, and stated, "[i]n other words, for all intents and purposes, the reality is that Appellant solely asserted his innocence in an attempt to withdraw his plea presentence." **Id**.

The trial court correctly stated that Appellant is challenging the complaining witness's credibility with this evidence, and that the Appellant was aware of this information at the time that he entered his plea of *nolo contendere*. We find no abuse of discretion in the trial court's determination that the Appellant did not offer a plausible claim of innocence, when he was challenging the complaining witness' credibility, known to him at the time he pleaded *nolo contendere*, and did not testify at the hearing regarding the motion to withdraw, and the trial court did not find Appellant credible. **Id**.

In both cases, Appellant next argued that the trial court erred in denying his motion to reconsider the denial of his pre-sentence motion to withdraw his

guilty plea. In the Attempted Murder motion, Appellant included an affidavit from Appellant's father, Ramon Abreu, which stated he saw Appellant's wife drive her car into Appellant's car. Motion to Reconsider (Attempted Murder), 5/10/19. The Motion for Reconsideration of Denial of Motion to Withdraw Guilty Plea in the Child Endangerment case included an affidavit from two of the victim's cousins, who stated that the victim fabricated the allegations against Appellant. Motion to Reconsider (Child Endangerment), 5/10/19. However, Appellant does not include an argument in his brief pertaining to the trial court's denial of Appellant's motion to reconsider the motion to withdraw guilty plea. As such, we find this argument is waived in both docket numbers. *Commonwealth v. Heggins*, 809 A.2d 908, 912 n.2 (Pa. Super. 2002) (holding that an issue identified on appeal but not developed in appellant's brief is abandoned and therefore waived).

Appellant next argued that the trial court abused its discretion in imposing an excessive consecutive sentence in both docket numbers.[8] Initially, we must determine whether Appellant has the right to seek permission to appeal the trial court's exercise of its discretion.

---

[8] In it's Pa.R.A.P. 1925(a) opinion, the trial court found this issue waived because Appellant failed to provide the sentencing transcripts to the trial court. Trial Court Opinion at 9-10; *See* Pa.R.A.P. 1911. On 3/6/2020, Appellant filed a "Motion to Remand" with this Court in order to provide this Court with the necessary transcripts. In a *per curiam* Order, this Court granted Appellant's request pursuant to Pa.R.A.P. 1926. The transcripts were subsequently provided to this Court on 4/20/2020. As such we do not find Appellant's issue waived for failure to provide transcripts.

> [W]here a defendant pleads guilty pursuant to a plea agreement specifying particular penalties, the defendant may not seek a discretionary appeal relating to those agreed-upon penalties. Permitting a defendant to petition for such an appeal would undermine the integrity of the plea negotiation process and could ultimately deprive the Commonwealth of sentencing particulars for which it bargained.

*Commonwealth v. Brown*, 982 A.2d 1017, 1018-19 (Pa. Super. 2009) (citations omitted).

For an Appellant challenging the discretionary aspects of his sentence after entering a guilty plea, the distinction between whether the plea was negotiated or open is crucial in determining whether or not an appeal from such a sentence will stand. *Commonwealth v. Dalberto*, 648 A.2d 16, 19 (Pa. Super. 1994) (where appellant and Commonwealth agreed to consecutive sentence for 2 of 8 charges, appellant was permitted to challenge the length of sentence, not the consecutive nature of the two charges); *Brown*, 982 A.2d at 1017 (appellant was permitted to pursue an appeal regarding the trial court's exercise of discretion with respect to the maximum term of his sentence and the location of his incarceration, but not the minimum term as appellant and Commonwealth entered into a plea bargain where appellant would be sentenced to a minimum term at the bottom end of the standard range of his sentencing guidelines and a maximum term to be set in the trial court's discretion and the sentencing court imposed a minimum term at the bottom of the standard range of appellant's sentencing guidelines).

Appellant, in his Attempted Murder case signed a guilty plea colloquy form containing the following statement:

> Prosecution Agreement(s). In return for this guilty plea, the Commonwealth has agreed to the following things: Commonwealth and Defendant agree that there will be no Deadly Weapon Enhancements. Defendant should receive a standard guideline range sentence with an [sic] minimum that falls between 10 years and 17 years.

Guilty Plea Colloquy Form (Attempted Murder), 2/4/19.

In the Child Endangerment case, Appellant signed a *nolo contendere* plea colloquy form stating, "In return for his guilty plea, the Commonwealth has agreed to . . . nol pros remaining charges. No objection to standard range sentence on all charges in both cases." *Nolo Contendere* Plea Form (Child Endangerment), 2/4/19.

Additionally, at the guilty plea hearing, the trial court stated,

> The Court: I've been advised that you and the Commonwealth have agreed that the minimum number that I'm going to give when I add up all the charges in the two cases will be somewhere between ten years and seventeen years. Is that also your understanding?
>
> Appellant: Yes.
>
> The Court: And is that also your agreement?
>
> Appellant: Yes.
>
> The Court: Part two of that arrangement is that there is no agreement on the maximum sentence that could be imposed so that you told me you understand all of the maximum penalties for each crime, right?
>
> Appellant: Yes.
>
> . . .

- 20 -

> The Court: And that is a matter completely in my discretion as I understand it in accordance with the agreement that you have reached with the Commonwealth and have discussed with your attorney.  Is that also your understanding?
>
> Appellant: Yes.

N.T. 2/4/19 at 18-20.

Appellant, in both his appellate briefs argued that the minimum sentence imposed was excessive.  In the Attempted Murder case, Appellant argued that his sentence was excessive because "the trial court imposed an aggregate cumulative sentence of twelve (12) to thirty-two (32) years, which was twice as great as the minimum standard concurrent sentence of six (6) to twelve (12) years."  Appellant's Brief (Attempted Murder) at 39.  Appellant stated that "the minimum sentence of twelve years imposed by the court was two times greater than the concurrent standard minimum sentence of six years." *Id*. at 41.

In the Child Endangerment case, Appellant first noted that the standard range sentence for both charges was nine (9) months to sixteen (16) months, plus or minus (6) months.  Appellant's Brief (Child Endangerment) at 35.  Appellant argued that his sentence was excessive because the trial court "sentenced Appellant to sixteen to forty-eight months for each offense, which yielded and imposed an aggregate cumulative sentence of thirty-two (32) months to ninety-six (96) months, which was more than three times greater than the minimum standard concurrent sentence of nine (9) months to eighteen (18) months."  Appellant's Brief (Child Endangerment) at 35.  He

- 21 -

further stated that "[t]he minimum sentence of thirty-two months imposed by the court was three and one-half times greater than the concurrent standard minimum sentence of nine months." *Id*. at 37.

Since the minimum sentence is implicated by the plea bargain reached between the Commonwealth and the Appellant, Appellant is not permitted to challenge the trial court's discretion regarding the minimum sentence. Appellant agreed to an aggregate minimum sentence of between 10 and 17 years as part of the plea bargain. As Appellant received an aggregate minimum sentence of 14 years, he cannot complain of an abuse of discretion. The trial court imposed a sentence within the agreed upon range. Appellant also appeared to raise an issue with regard to the trial court's discretion in imposing consecutive sentences. The consecutive nature of the charges is not implicated by the plea bargain, so Appellant will be permitted to petition this Court.

Appellant's challenge to the consecutive nature of his sentences implicates the discretionary aspects of his sentences. A defendant does not have an automatic right of appeal of the discretionary aspects of a sentence and instead must petition this Court for allowance of appeal, which "may be granted at the discretion of the appellate court where it appears that there is a substantial question that the sentence imposed is not appropriate under" the Sentencing Code. 42 Pa.C.S. § 9781(b); *see also Commonwealth v. Williams*, 198 A.3d 1181, 1186 (Pa. Super. 2018).

Prior to reaching the merits of a discretionary sentencing issue, we must engage in a four-part analysis to determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his [ ] issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [pursuant to Pa.R.A.P. 2119(f) ]; and (4) whether the concise statement raises a substantial question that the sentence is [not] appropriate under the [S]entencing [C]ode.

*Williams*, 198 A.3d at 1186 (citation omitted).

Appellant, in both docket numbers, satisfied the first three requirements; he filed a timely notice of appeal, he preserved his issue in a timely post-sentence motion, and his brief contains a concise statement of the reasons relied upon for allowance of appeal. We must determine whether Appellant's concise statement raises a substantial question that the sentence is not appropriate under the Sentencing Code.

> [W]e cannot look beyond the statement of questions presented and the prefatory [Rule] 2119(f) statement to determine whether a substantial question exists.
>
> It is settled that this Court does not accept bald assertions of sentencing errors. When we examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists, "[o]ur inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." A Rule 2119(f) statement is inadequate when it "contains incantations of statutory provisions and pronouncements of conclusions of law[.]"

*Commonwealth v. Radecki*, 180 A.3d 441, 468 (Pa. Super. 2018) (citations and some internal quotation marks omitted).

In the Attempted Murder case, Appellant asserts in his Pa.R.A.P. 2119(f) statement,

> The trial court abused its discretion in imposing an unreasonable, manifestly excessive consecutive sentence of Twelve (12) to Thirty-Two (32) years, where the sentence was grossly disproportionate to the gravity of the offense, Appellant's rehabilitative needs, and the protection of the community, and was the product of ill will and bias, which warranted the grant of recusal, thereby violating 42 Pa.C.S.A. Section 9712(b) of the sentencing code and the fundamental norms of sentencing.

Appellant's Brief (Attempted Murder) at 32. In the Child Endangerment case, Appellant's Pa.R.A.P. 2119(f) statement is as follows,

> the trial court abused its discretion in imposing an unreasonable, manifestly excessive consecutive sentence of thirty-two (32) months to ninety-six (96) [months], where the sentence was grossly disproportionate to the gravity of the offense, Appellant's rehabilitative needs, and the protection of the community, and was the product of ill will and bias, which warranted the grant of recusal, thereby violating 42 Pa.C.S.A. Section 9712(b) of the sentencing code and the fundamental norms of sentencing.

Appellant's Brief (Child Endangerment) at 28.

We therefore consider whether Appellant has presented a substantial question for our review.

> A defendant presents a substantial question when he [or she] sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process. One of the fundamental norms in the sentencing process is that a

> defendant's sentence be individualized.... The Sentencing Code prescribes individualized sentencing by requiring the sentencing court to consider the protection of the public, the gravity of the offense in relation to its impact on the victim and the community, and the rehabilitative needs of the defendant, . . . and prohibiting a sentence of total confinement without consideration of the nature and circumstances of the crime[,] and the history, character, and condition of the defendant,

*Commonwealth v. Luketic*, 162 A.3d 1149, 1160-61 (Pa. Super. 2017) (some internal citations and quotation marks omitted).

This Court has found a substantial question exists where a sentencing court failed to consider a defendant's individualized circumstances in its imposition of sentence in violation of the Sentencing Code. *See Commonwealth v. Ahmad*, 961 A.2d 884, 887 (Pa. Super. 2008).

> [A] defendant **may** raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

*Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013) (emphasis in original and some internal citations omitted); *See Commonwealth v. Riggs,* 63 A.3d 780, 786 (Pa. Super. 2012) (averment that court "failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs" of the defendant raised a substantial question).

In the current action, Appellant presents a substantial question by setting forth an argument that his consecutive sentence is contrary to the fundamental norm of the sentencing process that a defendant's sentence must be individualized, because the sentence was grossly disproportionate to the gravity of the offense, his rehabilitative needs and the protection of the community. *See* Appellant's Brief (Child Endangerment) at 28; Appellant's Brief (Attempted Murder) at 32; *Luketic*, 162 A.3d at 1160. Therefore, we will consider the substantive merits of Appellant's sentencing claim.

In the Attempted Murder case, Appellant argued that this Court should vacate his sentence because it is "unreasonable and grossly disproportionate to Appellant's rehabilitative needs, the gravity of the offense, [and] protection of the public. Appellant's Brief (Attempted Murder) at 38. In the Child Endangerment case, Appellant argued that the trial court abused its discretion, violated the fundamental norms of sentencing, and provisions of the sentencing code, in sentencing him to a manifestly excessive and unreasonable sentence that far surpassed what was required to protect the public, the complainant and the community, went well beyond what was required to foster Appellant's rehabilitation, and was grossly disproportionate to the offense. Appellant's Brief (Child Endangerment) at 29. Appellant argued that the trial court should have sentenced him to the minimum standard range for each charge, to run concurrently. Appellant's Brief (Attempted Murder) at 29; Appellant's Brief (Child Endangerment) at 35.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Lekka*, 210 A.3d 343, 350 (Pa. Super. 2019) (citation omitted).

> [W]here the sentencing judge had the benefit of a presentence report, it will be presumed that he was aware of relevant information regarding appellant's character and weighed those considerations along with the mitigating statutory factors.

*Commonwealth v. Conte*, 198 A.3d 1169, 1177 (Pa. Super. 2018) (citations and internal brackets and quotation marks omitted) (some additional formatting).

During sentencing, the trial court stated that it received and read the pre-sentence investigation report in this case. N.T. 4/30/19 at 73. The trial court heard testimony from a defense and Commonwealth witness regarding Appellant at sentencing, and both defense and the Commonwealth identified family members that were in the courtroom. Appellant was given the right to allocution. *Id*. at 88. Before sentencing Appellant in both cases, the prior record score, offense gravity score and standard sentencing range for each charge was placed on the record. The trial court was aware that the parties

had agreed that the aggregate minimum sentence for both docket numbers would fall between 10 and 17 years.

Before sentencing Appellant in both cases, the court stated,

> Mr. Abreu, in imposing the sentence you're about to hear I have considered several things.
>
> First, the pleas that were taken before the Court.
>
> Second, the content of the pre-sentence investigation report that was prepared by our probation office. And as I mentioned before, attached to that report was the report of the Sexual Offender Assessment Board which had some pertinent information but also concluded that you did not meet the criteria to be designated as a sexually violent predator; but I did consider that repot [sic] as well.
>
> In addition I have considered the Court's record and file in both cases, the sentencing laws, rules, and guidelines and then what the attorneys have argued and stated today.
>
> I've also listened to and am now considering the statements made by family members as has been characterized on both sides of this issue.

N.T. 4/30/19 at 88-89. Additionally, the trial court stated,

> In sentencing persons in Pennsylvania we need to consider several things; the seriousness and nature and grading of the crimes for which there was a conviction, public safety, the need for punishment and accountability, a defendant's rehabilitative prospects, impacts on the victims, impact on the community and many other facts and factors with an individualized view toward the defendant.
>
> With respect to you, you have a prior record score of two that you earned through a prior record consisting of five adult arrests and four convictions.
>
> You had very serious charges in this case that could well have resulted in even more serious injuries to the other two occupants and/or yourself or even death that made a situation that was already spiraling out of control even worse, that impacted family members, friends, the

community including both of your children, your son and your daughter, and is a type of crime that cries out for sanctions and punishment because your actions have put the public as well as the victims at risk.

The crimes with respect to your daughter are inexcusable and they have had a substantial impact on her. They are also of the type that are unsettling to members of the community, friends, family and neighbors, and also cry out for sanctions and punishment.

Beyond the individual view of a criminal defendant sentencing is, when reduced to the basics, comprised of several elements. One is punishment, the second is deterrents, and the third is rehabilitation. Within those there also needs to be victim restoration and acknowledgment and recognition of the impact on the lives of the victim, their family members, their friends and their communities.

So when I look at this case and I add up all that up what you did was devastating to many people. It was dangerous, had a substantial impact on the victims as well as those close to the victims and given your attitude, given your history, given your age and given the fact that you decided at this point after pleading to lash out at others I believe that your rehabilitative prospects are minimum.

N.T. 4/30/19 at 97-99. The trial court sentenced defendant to a total aggregate sentence of not less than 14 years, 8 months' incarceration nor more than 40 years in a State Correctional Institution. *Id*. at 102. Each sentence for each charge falls in the standard range sentencing guidelines.

After a thorough review of the record including the PSI, the briefs of the parties, the applicable law, and the sentencing transcripts, we conclude Appellant's issue merits no relief. The trial court considered Appellant's rehabilitative needs, and determined that Appellant had minimum rehabilitative prospects based on his history. The trial court also stated that

the sentence was based on the gravity of the offenses, which it found particularly egregious and had effected not only Appellant's immediate family but the community. Based on the foregoing, we will not disturb the trial court's discretion, and Appellant is not entitled to relief. *See Lekka*, 210 A.3d at 353; *Conte*, 198 A.3d at 1177.

In his final issue, Appellant argued in both docket numbers that the trial court erred in failing to recuse itself because the court "castigated his attitude." Appellant's Brief (Attempted Murder) at 42; Appellant's Brief (Child Endangerment) at 42. We discuss these arguments together. In his Child Endangerment case, Appellant raised an additional argument that the trial court erred in failing to recuse itself because the trial court presided over Appellant's dependency cases. Appellant's Brief (Child Endangerment) at 6.

Appellant argued that during sentencing the trial court was "visibly angered and concluded that Appellant is not amenable to rehabilitation because he voiced distrust of the prosecutor." Appellant's Brief (Attempted Murder) at 43. Appellant argued that "[d]uring Appellant's sentencing hearing the trial court expressed anger and displeasure over Appellant's statement criticizing the prosecutor handling the case and concluded that the Appellant's bitterness toward the criminal justice system militated against his rehabilitation." Appellant's Brief (Child Endangerment) at 38.

> This Court reviews the denial of a motion to recuse for an abuse of discretion. An abuse of discretion is not merely an error of judgment, but occurs only where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality,

prejudice, bias or ill will, as shown by the evidence or the record.

***Lomas v. Kravitz***, 170 A.3d 380, 389 (Pa. 2017) (citations and quotation marks omitted).

> The standards for recusal are well established. It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion. In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent.

***Commonwealth v. Abu-Jamal***, 720 A.2d 79, 89 (Pa. 1998) (citations omitted).

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, **judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.** They may do so if they reveal an opinion that derives from an **extrajudicial source**; and they will do so

if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.... **Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger**, that are within the bounds of what imperfect men and women, even after having been confirmed as [ ] judges, sometimes display.

*Commonwealth v. Kearney*, 92 A.3d 51, 61 (Pa. Super. 2014) (internal citations omitted and emphasis in original).

Appellant argued that the following comment made by the trial court compelled recusal. During Appellant's sentencing, the trial court stated,

> when I look at this case and I add all that up what you did was devastating to many people. It was dangerous, had a substantial impact on the victims as well as those close to the victims and given your **attitude**, your history, given your age and given the fact that you had decided at this point after pleading to lash out at others I believe that your rehabilitative prospects are minimum.

N.T. 4/30/19 at 98-99 (emphasis added). During the hearing on Appellant's post-sentence motion, the trial court stated that it,

> conducted the required self-assessment and concluded without reservation or hesitation that, First, I have no interest in the outcome of this case other than to ensure that all parties receive a fair trial and fair proceedings because this was actually a plea case - - - receive fair proceedings from the beginning to the end. Second, I have no bias against any party and have no doubt in my ability to be fair and impartial to Mr. Abreu and for the record the other cases that were heard that day as well including the ones that Mr. Raynor represented defendants in. And also third, I believe that an objective contextual review of my handling of this case as well as other case in this court involving Mr. Abreu show that I have been guided by the facts and the law applicable in rendering all of my decisions. . . . I do not believe that an objective person, lawyer or lay,

who is aware of all relevant facts, history, and rulings would perceive that my presiding over both the hearing on defendant's motion to withdraw his plea and the sentencing hearing considered alone or in conjunction with my handling of the dependency case or my continuing to preside over this case or any remarks that I made at or before the sentencing hearing demonstrates impartiality, bias, loss of objectivity, unfitness, or inability to be fair and impartial sufficient to require either disqualification or recusal.

. . .

I don't think I told Mr. Abreu he had an attitude; I think what I said was, you know, in the course of a matter where he had admitted to some pretty significant conduct towards three adults and also to his daughter, the idea now of blaming other people including his daughter and officers of the law and prosecutors really wasn't the best strategy to employ at the time.

. . .

I don't believe that if you even take it in the light most favorable to Mr. Raynor's argument that it comes even close to requiring recusal so I already denied the motion. Now for those reasons in the post-sentence motions I will deny that aspect.

N.T. 5/31/19 at 13-17.

We find that the trial court did not abuse its discretion in denying Appellant's motion to recuse based on the trial court's comment about Appellant's attitude. The trial court conducted the proper assessment in considering the motion to recuse and concluded it could be fair and impartial and that its continued involvement in the case did not give the appearance of impropriety. The trial court's use of the word "attitude" in regard to Appellant in no way displays a "deep-seated antagonism" toward Appellant. ***Kearney***,

92 A.3d at 61. Nor does a trial court's visible display of anger because Appellant "voiced distrust of the prosecutor" compel recusal.

Additionally, in the Child Endangerment case, Appellant argued that the trial court erred and abused its discretion when it failed to recuse itself for presiding over Appellant's dependency hearing. Appellant's Brief (Child Endangerment) at 38.

In its Pa.R.A.P. 1925(a) opinion, the trial court stated,

> it is clear that Defendant, both of his prior attorneys, and his current counsel knew for more than 10 months before the plea withdraw/sentencing hearing that I had presided over the dependency adjudication of [A].A.'s brother. In fact, the Superior Court affirmed the adjudication of [A].A.'s brother almost four months before Defendant was sentenced. Nonetheless, Defendant waited until the hearing to request recusal based on my participation in his son's dependency case. Since recusal was not sought at the "earliest possible moment," the motions were time-barred and the recusal issue was waived. For this additional reason, Defendant's motions for recusal were properly denied.

TCO at 12-13.

> [A] party must seek recusal of a jurist at the earliest possible moment, *i.e.*, when a party knows of the facts that form the basis for a motion to recuse. If the party fails to present a motion to recuse at the time, then the party's recusal issue is time-barred and waived.

***Kravitz***, 170 A.3d at 390.

Our review of the record reveals that Appellant first raised this issue orally during the May 31, 2019 hearing on his post-sentence motions. Specifically, Appellant argued, "due to the fact that you presided over the

dependency matter and you were aware of the facts - - you did find apparently that the child was dependent that there had apparently been abuse in that case – Your Honor had already made a determination and that should have precluded you from presiding over the criminal case."  N.T. 5/31/19 at 10. Appellant neglected to raise this issue when the trial court first stated that it presided over Appellant's dependency case [involving Appellant's son] on April 30, 2019, before sentencing.  Additionally, Appellant neglected to raise this issue in his post-sentence motion.  We agree with the trial court that Appellant's motion to recuse based on this claim was untimely.

Even if Appellant's motion was timely, we would find the trial court did not abuse its discretion in denying the motion to recuse on this claim.  The trial court stated that it conducted the self-assessment and has "no interest in the outcome of this case" and "no doubt in [its] ability to be fair and impartial to Mr. Abreu."  N.T. 5/31/19 at 13-17.

> [T]he mere participation by the trial judge in an earlier stage of the proceedings does not provide a *per se* basis for requiring recusal of the trial judge.

***Commonwealth v. Postie***, 110 A.3d 1034, 1038 (Pa. Super. 2015) (citation omitted).  The trial court conducted the proper assessment in considering the motion to recuse.  Appellant failed to establish any evidence of bias, prejudice, or unfairness by the judge based on his participation in a dependency hearing involving Appellant, nor did our independent review uncover any.  We find no

abuse of discretion in the trial court's denial of the motion to recuse on this ground. **Kearney**, 92 A.3d at 61.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/21/21